Gloria R. James, Esq.
Gloria R. James PLLC
8407 South 259th Street
Kent, Washington 98030
253-854-5626
E-mail: grjames@qwestoffice.net
Attorney for Plaintiffs

B. Lance Entrekin, Esq. (#016172)
The Entrekin Law Firm
5343 North 16th Street, Suite 200
Phoenix, Arizona 85016
(602) 954-1123
E-mail: lance@entrekinlaw.com
Attorney for Plaintiffs
*Admission Pro Hac Vice pending*

## IN THE UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES AND CONNIE ALDERSON, | NO.   3:15-cv-05926 |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| LANDERHOLM P.S., a Washington professional services corporation; T. RANDALL GROVE AND JANE DOE GROVE, husband and wife, | **(Other Personal Property Damage)** |
| | **(Jury Demand)** |
| Defendant. | |

For their Complaint, Plaintiffs allege as follows:

**PARTIES**

1. James and Connie Alderson ("the Aldersons") are a married couple who reside in and are citizens of the State of California.

2. Landerholm P.S. ("Landerholm") is a Washington state professional services corporation, incorporated in July, 1972, with its primary place of business in Vancouver, Washington. Landerholm is exclusively engaged in the practice of law.

3. T. Randall Grove is an attorney licensed to practice in the State of Washington and Jane Doe Grove is his fictitiously named spouse. At all times material hereto, T. Randall

Page 1 of 8

Grove was acting on behalf of his marital community and was also employed by and acting within the course and scope of his employment by Defendant Landerholm.

**JURISDICTION**

4. Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a)(1). Plaintiffs are citizens of California, Defendants are citizens of Washington, the events at issue occurred in Washington for the most part and the amount in controversy exceeds the jurisdictional minimum.

5. The minimum contacts required by *International Shoe Co. v. Washington*, 326 U.S. 310 (U.S. 1945) and its progeny are easily satisfied here. Defendants are Washington citizens, most relevant events occurred in Washington and the Plaintiffs have chosen to file in the forum.

**VENUE**

6. Venue is proper under 28 U.S.C. § 1391(b)(1) and/or (b)(2).

**GENERAL ALLEGATIONS**

**A.      Origins of the Trust**

7. The Aldersons are husband and wife. In 1990, Jim was a financial officer for North Valley Hospital in Montana. Management of North Valley Hospital was taken over around that time by Quorum, a hospital management company which had recently been spun off from Hospital Corporation of America ("HCA"). Jim was asked to prepare a second set of books, in order to aggressively bill Medicare and Medicaid and when he refused, he was terminated.

8. Jim first filed a wrongful termination lawsuit and later, in January, 1993, a qui tam lawsuit against HCA. In May, 1998, Jim and his family moved to Washington state. In October, 1998, the federal government announced that it would be intervening in his qui tam lawsuit.

9. A few months later, the Department of Justice began settlement talks with Quorum and HCA to settle the qui tam lawsuit. As one of only a couple relators in a lawsuit that ultimately settled for hundreds of millions of dollars, the Aldersons became aware that they were probably going to receive a very large sum of money.

10. The Aldersons contacted the Landerholm firm and on January 25, 1999, the Aldersons had their initial conference at the Landerholm firm.  In subsequent meetings, Jim stated that "both of their children are very sharp and have significant potential in the business world.  (The Aldersons) would like to invest in businesses that their respective children would serve as key employees and (the Aldersons) would like to see the children gradually take over the businesses."

11. Toward this end, Defendant Grove and other employees of Landerholm prepared a number of estate planning documents, the keystone of which was the Alderson Family Trust ("AFT"), a self settled, revocable trust organized under Washington law and dated June 7, 1999.  At p. 21, § 6(u) Defendants inserted a spendthrift provision and as Jim later explained to Defendants in writing, it was his understanding from the plain language of the provision and from the Aldersons' conversations with Defendants that this provision provided them with full asset protection.

12. In fact, in early 1999, only Alaska and Delaware allowed asset protection for a self settled trust and neither of those states allowed it for a revocable self settled trust, like AFT.  Adam J. Hirsch, "Fear Not the Asset Protection Trust," 27 Cardozo Law Review 2685 (2006).  In other words, AFT provided the Aldersons with no asset protection, anywhere in the country.

13. Believing that they were in fact protected, the Aldersons were careful to keep their assets in AFT and appropriately titled the assets from that time forward.  Over the next few years, they received very large sums of money from the settlement of the qui tam litigation.

**B.**     **Investment Decisions Based on the Belief The Trust Provided Asset Protection**

14. In 2004, the Aldersons and their friends, Buster and Sandra Schreiber, wanted to purchase a gas station together on Valencia Road in Tucson, Arizona.  Jim Alderson initially wanted AFT to be the purchasing entity, but the Aldersons ultimately decided not to place the AFT assets at risk, so in December, 2004, Val-Mid Associates LLC ("Val-Mid") was formed to purchase the station.  Val-Mid is 50% owned by Jim Alderson and 50% owned by Midvale Associates, an entity almost wholly owned by Sandra Schreiber.

15.  A local bank, Canyon Community Bank ("CCB") offered to lend $3,100,000 to Val-Mid, but made it clear that it wanted AFT to guarantee the loan.  The Aldersons were determined that AFT's assets would not be at risk, so instead of AFT guaranteeing the loan, AFT lent Val-Mid $2,000,000, CCB also lent Val-Mid $2,000,000 and the Valencia station was purchased, without a guarantee from AFT.

16. In early 2006, Val-Mid was approached about purchasing a second Chevron station at Palo Verde and Irvington in Tucson ("the Palo Verde station") for $3,100,000.  CCB obtained an appraisal of the two stations for $8,400,000 and agreed to increase Val-Mid's loan to $5,000,000, so that Val-Mid could purchase the second station.

17. As part of the 2006 loan, CCB required a subordination agreement whereby AFT's existing loan on the Valencia station was subordinated to CCB's loan.  In exchange for this subordination by AFT, AFT insisted on language in the subordination agreement that would prevent CCB from ever trying to hold AFT liable for the $5,000,000 loan.

18. The deed of trust subordination agreement states at paragraph 3: "AFT agrees, for the specific and intended benefit of the Lender, to perform and observe all of the terms and conditions on the New $5,000,000 Deed of Trust, **except AFT shall not, solely by virtue of this paragraph, become obligated for repayment of the new loan**." (Emphasis added).

19. The Aldersons personally guaranteed the $5,000,000 loan, confident that none of AFT's assets could be held to answer for their personal debts, based on their conversations with Defendants and on p. 21, § 6(u), which states: "the trust estate shall be free and clear from the control of the beneficiaries, and shall not be in any manner subject nor liable for their anticipation, pledge, sale, debts, contracts, engagements or liabilities, and shall not be subject to assignment by them nor liable to attachment or garnishment or any other legal process."

C.      **Landerholm Fails to Warn Them**

20. From 2008 through 2011, a price war started by QuikTrip in Tucson, coupled with the Great Recession, hugely impacted the stations and the principals had to repeatedly inject capital in order to keep the stations running.  The principals hired Axis Business Solutions in early 2012 to broker a sale of the stations, but this was unsuccessful and CCB declared the loan

1   in default, not because of a missed payment, but due to Val-Mid's failure to meet the debt

2   service coverage ratio during the prior year.

3       21. In May, 2012, the Aldersons contacted Defendant Grove, the attorney who drafted

4   AFT at Defendant Landerholm and asked him to contact CCB on the Aldersons' behalf and

5   "explain to (CCB) it is a spendthrift trust and the trustee cannot pay the beneficiaries debt."

6       22. The Aldersons also detailed for him how careful they had been over more than a

7   decade to title assets properly and insure that the assets stayed in the trust, where the Aldersons

8   believed they would not be subject to the Aldersons' personal debts.

9       23. When Defendant Grove was slow to respond, the Aldersons asked him to confirm

10  that the spendthrift clause was valid and stated: "I am assuming under Coumbe the Spendthrift

11  provision is legal, and it is not a settler's trust."  Defendant Grove responded: "I will coordinate

12  with Mike and he will follow up with you."

13      24. In a brief phone call on May 23, 2012, Mike Bortz informed Jim Alderson that

14  Defendants would not participate or contact CCB and that Alderson should hire Arizona

15  counsel.  Bortz also stated that one issue for Arizona counsel to consider was whether AFT was

16  revocable.  Bortz did not say what would happen if AFT was revocable or otherwise explain

17  why this was relevant.

18      25. Jim Alderson sent Bortz a follow up email indicating that from Jim's perspective

19  reading AFT as a layman, AFT did not seem to be revocable.  Bortz did not follow up and tell

20  him AFT was revocable or explain what effect this would have and no one from Landerholm

21  ever communicated with the Aldersons thereafter.  The Aldersons assumed that if AFT had any

22  exposure on the Aldersons' personal guarantee, Bortz or Grove would have told them.

23      **D.    The Lawsuit**

24      26. On July 30, 2012, CCB filed a breach of guarantee lawsuit against the Aldersons,

25  Schreiber and AFT, C20124684 in Pima County Superior Court.  The Complaint at pars. 17, 24

26  and 25 sought to hold AFT liable under an alternate theory and said nothing whatsoever about

27  AFT being liable because of the Aldersons' personal guarantees.

28      27. In early Summer, 2013, the court entered summary judgment against the individual

1  guarantors, the Aldersons, for a total of $5,011,932.61.  The Aldersons were not greatly

2  concerned, because virtually all their assets were in AFT and they believed it to be unreachable

3  for their personal debts.

4      28. In mid 2013, CCB's alternate theory of liability against AFT was rejected by the

5  trial court.  For the first time, CCB then made the argument that AFT was liable on the

6  Aldersons' personal guarantees, because AFT was a revocable, self settled trust. CCB then had

7  a Writ of Garnishment of AFT's accounts at Merrill Lynch issued, on the theory that these

8  accounts were fully subject to the debts of the Aldersons.

9      **E.      Outcome**

10      29. Research in the Summer of 2013 revealed that a self settled, revocable trust

11  provided the Aldersons with no asset protection whatsoever, in any state of the union.

12  However, AFT could still be free and clear of any obligation related to the Aldersons' personal

13  guarantees, if the trial court accepted the argument that paragraph 3 of the deed of trust

14  subordination contractually prevented CCB from pursuing AFT's assets.

15      30. On September 27, 2013, the trial court rejected the argument related to paragraph 3

16  of the deed of trust subordination.  The trial court further held that a self settled, revocable trust

17  was fully subject to the debts of the settlors (the Aldersons) and therefore, AFT was fully liable

18  on the judgment arising from the Aldersons' personal guarantee.  On August 26, 2014, the

19  Arizona Court of Appeals held that AFT was fully liable for the judgment against the

20  Aldersons.

21      31. Millions of dollars which the Aldersons had placed in AFT for asset protection

22  purposes, on the assurances of Defendants, were ultimately paid out to CCB, in order to satisfy

23  the judgment against the Aldersons as guarantors.

24  **CAUSES OF ACTION**

25  **COUNT ONE - NEGLIGENCE (All Defendants)**

26      32. Plaintiffs repeat the allegations as if set forth herein.

27      33. Defendant Grove acted as the attorney for the Aldersons.  Defendant Grove had a

28  duty of care to the Aldersons.  Defendant Grove failed to act as an attorney of ordinary

prudence would act in the same or similar circumstances while representing the Aldersons.

34. Said failure was the proximate cause of substantial damages to the Aldersons. Defendant Landerholm is fully liable for the actions of Defendant Grove, who was acting within the course and scope of his duties as an employee and agent of Defendant Landerholm. Defendant Landerholm is equally liable for the actions of all other employees acting within the course asnd scope which were a cause of the Aldersons' damages.

**COUNT TWO - BREACH OF FIDUCIARY DUTY (All Defendants)**

35. Plaintiffs repeat the allegations as if set forth herein.

36. Defendant Grove acted as the attorney for the Aldersons.  Defendant owed the Aldersons fiduciary duties, which he was bound to discharge with strictest fidelity and the highest and utmost good faith.

37. Defendant breached said duty and said breach proximately caused substantial damages to the Aldersons.  Defendant Landerholm is fully liable for the actions of Defendant Grove, who was acting within the course and scope of his duties as an employee and agent of Defendant Landerholm.  Defendant Landerholm is equally liable for the actions of all other employees acting within the course asnd scope which were a cause of the Aldersons' damages.

**JURY REQUEST**

38. Plaintiffs hereby request a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court grant judgment against Defendants for:

A. Compensatory damages;

B. Costs;

C. Post judgment interest on all sums; and

D. Any other relief that the Court sees fit to grant.

DATED this 21st  day of December, 2015.

GLORIA R. JAMES PLLC

S/Gloria James
Gloria R. James, Esq.
Gloria R. James PLLC
8407 South 259th Street
Kent, Washington 98030
253-854-5626
grjames@qwestoffice.net
Attorney for Plaintiffs


THE ENTREKIN LAW FIRM
B. Lance Entrekin, Esq.
The Entrekin Law Firm
5343 North 16th Street, Suite 200
Phoenix, Arizona 85016
(602) 954-1123
E-mail: lance@entrekinlaw.com
Attorney for Plaintiffs